# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

DEBORA J. MAYES,        )
                         )
      Plaintiff,        )
                         )
v.                   )    Case No.: 2:17-cv-01968-SGC
                         )
BIRMINGHAM CITY SCHOOLS,  )
                         )
      Defendant.     )

## MEMORANDUM OPINION[1]

This is an employment discrimination case. The plaintiff, Dr. Debora J. Mayes, claims the defendant, Birmingham City Schools, discriminated against her based on her age, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 – 634 (the "ADEA"). (Doc. 1). She also asserts a state law claim for breach of contract against the defendant. (*Id.*). Pending before the undersigned is the defendant's motion for summary judgment. (Doc. 20). For the reasons discussed below, the motion is due to be granted, and this action is due to be dismissed with prejudice.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 11).

## I.    Material Facts[2]

The plaintiff was born in 1955 and has been employed by the defendant in its Fine Arts department since 1977.  (Doc. 22-4 at pp. 3, 6).  She began her employment as a band teacher.  (*Id.* at p. 3).  In 1997, she was promoted to the position of Instrumental Music Curriculum Support Teacher.  (*Id.*).  In this position, the plaintiff assisted the teaching efforts of band teachers throughout the school district, started instrumental music programs, prepared professional development programs, and wrote grants, all from the defendant's central office.  (*Id.*).  As part of a reduction in force in 2003, the plaintiff was placed back in her teaching position.  (*Id.*).

In August 2007, a position was posted for a Program Specialist to support teachers in the Fine Arts department at large.  (Doc. 22-5 at pp. 24-25; Doc. 27-1 at ¶¶ 4-6).  The plaintiff applied for the position.  (Doc. 27-1 at ¶ 4).  The posting was withdrawn on the day the position was set to close for applications, and a lower-paying position was posted for an Instrumental Music Curriculum Support Teacher to support instrumental music teachers specifically.  (*Id.*; Doc. 22-4 at pp. 4-5, 13, 22-23).  The Chief of Staff for the defendant testified it was his understanding the Program Specialist position had been posted without the knowledge or approval of the defendant's Chief Financial Officer, who required the posting to be withdrawn

---

[2] The following facts are undisputed, unless otherwise noted.  They are viewed in the light most favorable to the plaintiff, as the non-movant, with the plaintiff given the benefit of all reasonable inferences.

because there was not funding for the position. (Doc. 22-5 at pp. 4-5). The plaintiff applied for and received the Instrumental Music Curriculum Support Teacher position. (Doc. 22-4 at pp. 4, 9). However, notwithstanding her title and pay, the plaintiff essentially performed the duties of a Program Specialist. (Doc. 27-1 at ¶¶ 6, 8, 14).

At the time of the plaintiff's promotion to Instrumental Music Curriculum Support Teacher in 2007, Julia Maston was the only remaining Program Specialist in the Fine Arts department. (Doc. 23-1 at ¶ 3). The defendant asserts that after Ms. Maston retired in December 2007 it stopped employing Program Specialists in the Fine Arts department, based on financial considerations and the determination the department could run efficiently and effectively without Program Specialists. (*Id.*).[3]

After the Alabama State Department of Education (the "ASDOE") temporarily took over the defendant in 2012, it performed an audit and recommended in May of that year that Program Specialists be hired for a variety of instructional areas, including one Program Specialist for the Fine Arts department. (Doc. 22-5 at pp. 10-11; Doc. 22-7 at pp. 19-20). The plaintiff asserts it is her understanding the ASDOE would not have recommended the defendant hire a

---

[3] The defendant did hire an additional Curriculum Support Teacher for the Fine Arts department in 2016, after determining this addition would enable the department to run more efficiently and effectively and would assist in achieving the goal of expanding and enhancing the defendant's music and arts programs. (Doc. 23-1 at ¶ 4).

Program Specialist for the Fine Arts department unless there was funding to support the position (Doc. 27-1 at ¶ 11), and the defendant's Chief of Staff testified it was also his assumption the ASDOE's recommendations would have been tied to available funding (Doc. 22-5 at p. 10). However, the defendant's Chief of Staff emphasized the ASDOE's recommendations were just that – recommendations, not requirements – and stated there were other recommendations made by the ASDOE that the defendant did not adopt. (*Id.* at p. 11). For example, although the ASDOE recommended the defendant eliminate seven nurse positions, the defendant determined it did not have enough nurses to care for students with disabilities and refilled these positions. (*Id.*).

In October 2012, the plaintiff communicated with then-superintendent Dr. Craig Witherspoon about being promoted to the position of Program Specialist. (Doc. 27-1 at ¶ 9). The plaintiff claims Dr. Witherspoon indicated he thought she was a Program Specialist, that through representations made orally and by e-mail Dr. Witherspoon vowed to make her a Program Specialist, and that she expected the promotion to happen no later than the start of the 2013-2014 school year. (*Id.*; Doc. 22-4 at pp. 35-37; Doc. 22-9 at p. 8). She further claims that based on Dr. Witherspoon's promise she rebuffed more lucrative job offers. (Doc. 27-1 at ¶ 10).

When the defendant did not hire her as a Program Specialist for the Fine Arts department at the start of the 2013-2014 school year, the plaintiff continued to

advocate for her promotion until she filed her charge of age discrimination with the Equal Employment Opportunity Commission (the "EEOC") in September 2016. (*Id.* at ¶ 13; Doc. 1-1). John McAphee, the Coordinator of Fine Arts to whom the plaintiff reported in her position as an Instrumental Music Curriculum Support Teacher, advocated for the plaintiff's promotion to Program Specialist, as well. (Doc. 22-9 at p. 5; Doc. 27-1 at ¶ 8).[4]

Although the defendant has not hired a Program Specialist for the Fine Arts department since it withdrew the August 2007 posting for the position, or even employed a Program Specialist in that department since Ms. Maston's retirement in December 2007, the defendant has hired Program Specialists for other departments during the relevant period based on the needs of the departments and available funding. (Doc. 23-1 at ¶¶ 5-13; Doc. 27-1 at ¶ 12). For example, the defendant employs Program Specialists in its Special Education, Federal Programs, Professional Development, Career Academies, Social Studies, and Physical Education departments. (Doc. 23-1 at ¶¶ 6-13). Multiple of these Program Specialists are younger than the plaintiff. (Doc. 22-9 at pp. 12, 19; Doc. 27 at pp. 11-12; Doc. 27-1 at ¶ 12). The qualifications and job requirements for a Program

---

[4] Mr. McAphee described the plaintiff as an above-average teacher. (Doc. 22-9 at p. 2, 4). The plaintiff and her bands have received numerous accolades, and she has been selected to speak to band teachers at a national conference about how to succeed in disadvantaged situations. (*Id.* at pp. 3, 6-7, 11; Doc. 22-4 at p. 22).

Specialist vary depending on the department he or she serves. (*See* Doc. 23-2, Doc. 23-3).

The defendant promoted the plaintiff to the position of Interim Coordinator of Fine Arts in January 2018, when Mr. McAphee retired. (Doc. 23-1 at ¶ 15). The plaintiff was made the permanent Coordinator of Fine Arts in June 2018. (*Id.*).

## II.    Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute as to a material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party carries its initial burden, the non-movant must go beyond the pleadings and come forward with evidence showing there is a genuine dispute as to a material fact for trial. *Id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* at 248. If the

evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Id.* at 249-50 (internal citations omitted). All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences should be drawn in the non-movant's favor. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## III. Discussion

### A. ADEA Claim

The ADEA prohibits an employer from discriminating against an employee who is at least forty years old "because of" that person's age. 29 U.S.C. §§ 623(a)(1), 631(a). There are three theories of discrimination under the ADEA: disparate treatment discrimination, pattern-and-practice discrimination, and disparate impact discrimination. *See Smith v. City of Jackson*, 544 U.S. 228, 240 (2005) (holding that in addition to authorizing disparate treatment claims, ADEA authorizes disparate impact claims); *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1227 (11th Cir. 2001) (noting plaintiffs proceeded under pattern-and-practice theory of age discrimination). The plaintiff in this case proceeds under the first theory.

A plaintiff can establish a disparate treatment claim under the ADEA with direct or circumstantial evidence. *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010). "Direct evidence is evidence, that, if believed, proves

the existence of a fact without inference or presumption." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotation marks and alterations omitted), *abrogated in part on other grounds by Lewis v. Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir. 2019). "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of age, constitute direct evidence of discrimination." *Van Voorhis v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008) (internal quotation marks and alterations omitted) (holding manager's statement he "didn't want to hire an old pilot" was direct evidence of age discrimination); *see also Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 855 (11th Cir. 2010) (noting Eleventh Circuit has held documents stating "Fire Early – he is too old" and 'Fire Rollins – she is too old" were direct evidence of age discrimination). Evidence that suggests, but does not prove, a discriminatory motive is circumstantial evidence. *Burrell v. Bd. of Trs. of Georgia Military Coll.*, 125 F.3d 1390, 1393-94 (11th Cir. 1997). The plaintiff in this case has not come forward with any direct evidence of age discrimination and instead relies on circumstantial evidence.

The Eleventh Circuit evaluates ADEA disparate treatment claims that are based on circumstantial evidence using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Sims v. MVM,*

*Inc.*, 704 F.3d 1327, 1332-33 (11th Cir. 2013).[5]  Under this framework, a plaintiff establishes a *prima facie* case of age discrimination by showing (1) she was a member of the protected group of persons between the ages of forty and seventy, (2) she was subjected to an adverse employment action, (3) her employer treated a substantially younger person otherwise similarly situated to her (a "comparator") more favorably, and (4) she was qualified to do the job at issue.  *Kragor v. Takeda Pharm. America, Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (setting forth elements of *prima facie* case); *Hawthorne v. Baptist Hosp., Inc.*, 448 F. App'x 965, 968 (11th Cir. 2011) (same); *Liebman v. Metropolitan Life Ins. Co.*, 808 F.3d 1294, 1298-99 (11th Cir. 2015) (noting with respect to third element that proper inquiry is whether comparator was substantially younger than plaintiff, not whether comparator is outside the plaintiff's protected class).  The burden then shifts to the defendant to put forth a legitimate, non-discriminatory reason for the adverse employment action and then back to the plaintiff to show the proffered reason is a pretext for discrimination.  *Kragor*, 702 F.3d at 1308.

However, use of the *McDonnell Douglas* burden-shifting framework "is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination

---

[5] Because this is also the framework used to evaluate employment discrimination claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, Title VII and ADEA case law is interchangeable.  *Vickery v. Medtronic, Inc.*, 997 F. Supp. 2d 1244, 1253 n.5 (S.D. Ala. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000)).

case." *Sims*, 704 F.3d at 1333. "Instead, 'the plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.'" *Id.* (quoting *Smith v. Lockheed Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). "A triable issue of fact exists 'if the record, viewed in the light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Smith*, 644 F.3d at 1328). Whether a plaintiff relies on the *McDonnell Douglas* burden-shifting framework or the presentation of a "convincing mosaic" of circumstantial evidence, the language "because of" in the ADEA means the burden of persuasion always remains with the plaintiff to prove age discrimination was the "but-for" cause of the adverse employment action. *Id.* at 1331-33 (discussing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)).

## 1. Failure to Establish *Prima Facie* Case

The plaintiff has failed to come forward with evidence to support the third element of a *prima facie* case of age discrimination.[6]  A comparator must be

---

[6] In its reply brief, the defendant argues for the first time that the plaintiff has failed to present evidence to support the second element. More specifically, the defendant argues the plaintiff was never subjected to an adverse employment action because there was never an opening for a Program Specialist position in the Fine Arts department. In other words, the defendant argues the plaintiff's claim the defendant should have created that opening for her in response to requests she be promoted is not actionable. The undersigned declines to address this argument because it was raised for the first time in a reply brief. *See Pearl v. Mad Engine, Inc.*, 2015 WL 5179517, at *3

similarly situated to an ADEA plaintiff in "all material respects." *Lewis*, 918 F.3d at 1218, 1224-29 (clarifying standard for comparator evidence in context of race discrimination case); *Menefee v. Sanders Lead Co., Inc.*, 786 F. App'x 963, 967 (11th Cir. 2019) (applying clarified standard in context of age discrimination case). As the word "material" indicates, "a valid comparison [] turn[s] not on formal labels, but rather on substantive likenesses." *Lewis*, 918 F.3d at 1228. Therefore, ordinarily, a valid comparator "ha[s] engaged in the same basic conduct (or misconduct) as the plaintiff"; "ha[s] been subject to the same employment policy, guideline, or rule as the plaintiff"; "ha[s] been under the jurisdiction of the same supervisor as the plaintiff"; and "share[s] the plaintiff's employment or disciplinary history." *Id.* at 1227-28. Nonetheless, "what sort of similarity the in 'all material respects' standard entails [requires consideration] on a case-by-case basis, in the context of individual circumstances." *Id.* at 1227.

The plaintiff in this case offers employees of the defendant younger than herself who hold the title of Program Specialist as comparators to support her *prima facie* case of age discrimination. However, formal labels do not demonstrate material similarity, *Lewis*, 918 F.3d at 1228, and the plaintiff has not presented any evidence showing she and the alleged comparators share substantive likenesses.

n.6 (N.D. Ala. Sept. 4, 2015) ("A new issue cannot be raised for the first time in a reply brief the non-movant has no opportunity to answer.").

Instead, the unrefuted evidence shows the defendant hired the alleged comparators as Program Specialists in departments distinct from the Fine Arts department based on the particular needs of those departments and available funding and that the job qualifications and responsibilities of the alleged comparators were tied to specific instructional areas other than the arts. Given that on the record before the undersigned the similarity between the plaintiff and the alleged comparators begins and ends with the technical title the plaintiff sought to hold in one department and that the alleged comparators hold in entirely different departments, each with its own needs, the plaintiff has failed to satisfy her burden to identify an individual similarly situated to herself in all material respects who the defendant treated more favorably. *See Welch v. Mercer Univ.*, 304 F. App'x 834, 837 (11th Cir. 2008) (holding two women outside plaintiff's protected class who worked in an entirely different academic department with entirely different standards for promotion were not valid comparators that would support plaintiff's race discrimination claim that was based on a failure to promote). For this reason, the plaintiff cannot make out a *prima facie* case of age discrimination under the *McDonnell Douglas* burden-shifting framework.

## 2. Legitimate Non-Discriminatory Reason for Not Promoting Plaintiff to Program Specialist Position

Assuming for the sake of argument that the plaintiff had established a *prima facie* case of age discrimination, the defendant has articulated legitimate, non-discriminatory reasons for not promoting the plaintiff to the position of Program Specialist in the Fine Arts department, and the plaintiff has failed to show the reason is a pretext for discrimination. An employer's burden under the *McDonnell Douglas* framework is one of production, not persuasion. *Kragor*, 702 F.3d at 1308. To satisfy its burden, an employer "need not persuade the court that it was actually motivated by the proffered reasons" but, rather, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* (internal quotation marks omitted). This burden has been described as " 'exceedingly light.'" *Bradley v. Pfizer, Inc.*, 440 F. App'x 805, 808 (11th Cir. 2011) (quoting *Meeks v. Computer Assocs. Intern.*, 15 F.3d 1013, 1019 (11th Cir. 1994)).

The defendant has presented evidence it withdrew the August 2007 posting for a Program Specialist to support teachers in the Fine Arts department because there was not funding for the position. It has also presented evidence it has not hired a Program Specialist for the Fine Arts department since that time or even employed a Program Specialist in the Fine Arts department since Ms. Maston retired in

December 2007, based on financial considerations and the determination the department could run efficiently and effectively without Program Specialists. This satisfies the defendant's burden under the *McDonnell Douglas* framework. *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002) ("The nonexistence of an available position [based on lack of funding] is a legitimate reason not to promote."); *Sims*, 704 F.3d at 1334 (holding budget constraints were a legitimate, non-discriminatory reason for challenged employment action); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977) (noting "absence of a vacancy in the job sought" is legitimate reason for not hiring a person for a position).

### 3. Failure to Demonstrate Pretext

"The inquiry into pretext centers on the employer's beliefs, not the employee's . . . ." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer." *Chapman*, 229 F.3d at 1030. "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.*; *see also Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'") (quoting *Mechnig v.*

*Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988)); *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("[An] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."), *abrogated in part on other grounds by Lewis*, 918 F.3d at 1213, 1218, 1224-29.

Thus, to meet her burden at the third step of the *McDonnell Douglas* framework, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies[,] or contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (internal quotation marks omitted). Moreover, even if a plaintiff shows an employer's proffered reason is false, she still may not be entitled to survive summary judgment. *Alvarez*, 610 F.3d at 1266. "[A] reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Springer*, 509 F.3d at 1348 at 1349 (internal quotation marks omitted); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (stating that even if plaintiff disproved employer's proffered reason for challenged employment action, employer would still be entitled to judgment as a matter of law if record "conclusively revealed some other,

nondiscriminatory reason" for action); *Chapman*, 229 F.3d at 1025 n.11 (applying *Reeves* in summary judgment context).

### a. ASDOE's May 2012 Recommendation

As evidence to counter the defendant's proffered reasons for not promoting the plaintiff to the position of Program Specialist in the Fine Arts department, the plaintiff offers the recommendation made by the ASDOE in May 2012. This evidence does nothing to call into question the defendant's stated reasons for withdrawing the August 2007 posting for a Program Specialist to support teachers in the Fine Arts department and not hiring a Program Specialist for that department between August 2007 and May 2012.

It does not render the defendant's stated reasons unworthy of credence with respect to the post-May 2012 period, either. Even if the recommendation indicates the ASDOE believed the defendant should hire a Program Specialist for the Fine Arts department and had the money to do so, it does not show the defendant did not believe its financial resources should not be spent for this purpose. Just as the defendant determined it did not have enough nurses to care for students with disabilities and, therefore, needed to refill seven nurse positions the ASDOE had recommended it eliminate, it could have compared its financial resources to the needs of its departments and determined that notwithstanding the ASDOE's recommendation it would be imprudent to allocate any of its resources toward the

employment of a Program Specialist for the Fine Arts department.  In other words, the business judgment that matters in this case is that of the defendant, not that of the ASDOE or the plaintiff.

Moreover, the question is not whether as of May 2012 the defendant had the money to hire a Program Specialist for the Fine Arts department or whether that department would have benefitted from the addition of a Program Specialist.  The question is whether the defendant believed its financial resources were better spent in ways other than hiring a Program Specialist for the Fine Arts department, even if that belief was erroneous, or instead merely used its finances and program needs as cover for discriminating against the plaintiff because of her age.  *See Alvarez*, 610 F.3d at 1266 (noting relevant question was not whether there were problems with plaintiff's job performance but, rather, whether plaintiff's employers were dissatisfied with her for this or other non-discriminatory reasons, even if mistakenly or unfairly so, or instead merely used performance problems as cover for discriminating against plaintiff because of her Cuban origin).  The plaintiff has presented no evidence showing the defendant did not believe its stated reasons for not promoting her to a Program Specialist position.[7]

---

[7]  Additionally, the undersigned notes the defendant's statement it determined the Fine Arts department could run efficiently and effectively without a Program Specialist is supported by the plaintiff's insistence that in her position as an Instrumental Music Curriculum Support Teacher she had been performing the duties of a Program Specialist since her promotion to the support teacher position in 2007.

### b. Consistency of Defendant's Explanations

The plaintiff also argues the defendant has offered shifting or inconsistent *post hoc* explanations for its decision not to promote her to a Program Specialist position. *See Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 526 (11th Cir. 1994) (holding employer's inconsistent explanations for challenged decision were evidence of pretext); *Bechtel Const. Co. v. Sec'y of Labor*, 50 F.3d 926, 935 (11th Cir. 1995) (holding pretextual nature of plaintiff's termination was demonstrated by employer's shifting explanations for its actions). Specifically, she contrasts the reason the defendant gave in its response to her EEOC charge with the reason the defendant gave in its discovery responses in this action and to the plaintiff herself. (Doc. 27 at 14).

In its response to the plaintiff's EEOC charge, the defendant stated it made the decision to add a Curriculum Support Teacher to the Fine Arts department in 2016 "based solely on the needs of the district," which included the defendant's goal of expanding and enhancing its music and arts programs. (Doc. 22-8 at p. 17). In its discovery responses in this action, the defendant stated both that it withdrew the August 2007 posting for a Program Specialist to support teachers in the Fine Arts department and that it has not employed a Program Specialist in this department since Ms. Maston's retirement in December 2007 based on financial considerations and the determination the department could run efficiently and effectively without

Program Specialists.  (Doc. 22-8 at pp. 5-6).  According to the plaintiff, the defendant consistently told her it did not have funding to hire a Program Specialist for the Fine Arts department.  (Doc. 22-4 at p. 21; Doc. 27-1 at ¶ 11).

These explanations pertain to different employment decisions – the decision to add a Curriculum Support Teacher to the Fine Arts department on the one hand and the decision not to hire a Program Specialist for the Fine Arts department on the other – and are not shifting or inconsistent.  They show the defendant made hiring decisions related to the Fine Arts department by balancing financial considerations and program needs.  To the extent the plaintiff suggests the defendant originally maintained its decision not to promote her to a Program Specialist position was based solely on fiscal concerns and only later added that the needs of the Fine Arts department factored into the decision, the existence of an additional non-discriminatory basis for a challenged employment decision does not demonstrate inconsistency or prove pretext.  *See Tidwell v. Carter Prods.*, 135 F.3d 1522, 1528 (11th Cir. 1998) (holding that at most, a jury could find plaintiff's performance was an additional, but undisclosed, reason for his termination).

Because the defendant has articulated legitimate, non-discriminatory reasons for the action – or, rather, inaction – challenged by the plaintiff, which the plaintiff has failed to rebut, the plaintiff could not carry her burden under the *McDonnell Douglas* framework or prove her age was the "but-for" reason the defendant did not

promote her to a Program Specialist position, even if she had identified a valid comparator.[8]  Accordingly, the plaintiff's age discrimination claim is due to be dismissed with prejudice.[9]

## B. Breach of Contract Claim

The Alabama Constitution provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity."  Ala. Const. 1901, § 14.  "This section affords the State *and its agencies* 'absolute' immunity from suit in any court."  *Bd. of Sch. Comm'rs of Mobile Cty. v. Weaver*, 99 So. 3d 1210, 1216-17 (Ala. 2012) (emphasis in original).  "Local school boards are agencies of the State, not of the local governmental units they serve, and they are entitled to the same

---

[8] The undersigned notes the plaintiff has also failed to present a "convincing mosaic" of circumstantial evidence that would permit the inference the defendant intentionally discriminated against her.  Dr. Witherspoon's belief the plaintiff was, in fact, a Program Specialist and purported promise to make the plaintiff a Program Specialist upon learning she did not hold this title undermine the plaintiff's claim the defendant did not make her a Program Specialist because of her age.  The fact that upon Mr. McAphee's retirement, the defendant made the plaintiff the Coordinator of Fine Arts, a position above that of Program Specialist, further undermines the plaintiff's claim the defendants intentionally discriminated against her based on her age.

[9] Because it is clear the plaintiff's ADEA claim fails on the merits, the undersigned declines to address the defendant's alternative argument the plaintiff failed to exhaust her administrative remedies by filing a timely charge of age discrimination with the EEOC.  The undersigned notes that while exhaustion of administrative remedies is a statutory condition precedent to suit, it is not a jurisdictional requirement, such that a plaintiff's failure to file a timely charge of age discrimination with the EEOC would deprive a district court of subject matter jurisdiction. *Sheffield v. United Parcel Serv., Inc.*, 403 F. App'x 452, 454 n.1 (11th Cir. 2010) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 398 (1982)); *Harris v. Bd. of Trs. Univ. of Alabama*, 846 F. Supp. 2d 1223, 1236-37 (N.D. Ala. 2012) (citing *Zipes*; *Jackson v. Seaboard C.L.R. Co.*, 678 F.2d 992, 1003 (11th Cir. 1982)).

absolute immunity as other agencies of the State." *Ex parte Bessemer Bd. of Educ.*, 68 So. 3d 782, 789-90 (Ala. 2011) (holding § 14 immunity barred claim for miscalculation of statutory pay raise asserted against Bessemer Board of Education); *see also Ex parte Boaz City Bd. of Educ.*, 82 So. 3d 660, 662 (Ala. 2011) (holding § 14 immunity barred tort claims asserted against Boaz City Board of Education); *Ex parte Hale Cty. Bd. of Educ.*, 14 So. 3d 844, 846-49 (Ala. 2009) (holding § 14 immunity barred claim for breach of implied contract asserted against Hale County Board of Education).[10]

"[T]here are six general categories of actions that do not come within the prohibition of § 14." *Weaver*, 99 So. 3d at 1217. These are as follows:

---

[10] Relatedly, the Eleventh Amendment to the U.S. Constitution bars suits for money damages against a state by its citizens, unless the state has waived its Eleventh Amendment immunity or Congress has abrogated it. *Carr v. City of Florence, Alabama*, 916 F.2d 1521, 1524 (11th Cir. 1990). Moreover, Eleventh Amendment immunity extends to state entities when they act as "arm[s] of the state." *Lightfoot v. Henry Cty. School Dist.*, 771 F.3d 764, 768 (11th Cir. 2014) (internal quotation marks omitted). The State of Alabama has not waived its Eleventh Amendment immunity. *Carr*, 916 F.2d at 1525. The United States Supreme Court has held that although the ADEA authorizes suits against states, Congress was without authority to abrogate states' Eleventh Amendment immunity against ADEA claims. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91 (2000). However, while local school boards are agencies of the state for purposes of the immunity against state tort and contract claims provided by § 14 of the Alabama Constitution, they are not arms of the state for purposes of the immunity against federal claims provided by the Eleventh Amendment to the U.S. Constitution. *Walker v. Jefferson Cty. Bd. of Educ.*, 771 F.3d 748, 750-56 (11th Cir. 2014); *see also Stewart v. Baldwin Cty. Bd. of Educ.*, 908 F.2d 1499, 1510 n.6 (11th Cir. 1990) (noting it was improper to "conflate sovereign immunity with regard to state-created tort with Eleventh Amendment immunity for a federal cause of action"). Therefore, the defendant is not immune from suit against the plaintiff's ADEA claim. *See Walker*, 771 F.3d at 757 (holding Eleventh Amendment did not immunize Jefferson County Board of Education from claim asserted against it under Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, or Madison City Board of Education from claim asserted against it under Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301, *et seq.*).

(1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; [] (4) actions brought under the Declaratory Judgments Act . . . seeking construction of a statute and its application in a given situation . . . (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law.

*Id.* at 1218-19. "However, these 'exceptions' to § 14 immunity extend only to actions against State officials, and not to actions against State agencies." *Id.* at 1217. Therefore, while the plaintiff argues the evidence allows for the inference Dr. Witherspoon acted beyond his authority in promising to make the plaintiff a Program Specialist in the Fine Arts department, this does not except the Birmingham City Schools, the sole defendant in this action, from absolute immunity. *See Ex parte Bessemer Bd. of Educ.*, 68 So. 3d at 790 (noting no "exception" to § 14 immunity applied to Bessemer Board of Education itself). Because the defendant enjoys the protections of § 14 of the Alabama Constitution, the breach of contract claim asserted against it is due to be dismissed with prejudice.[11]

---

[11] Because it is clear § 14 immunity bars the breach of contract claim asserted against the defendant, the undersigned declines to address the defendant's alternative argument the plaintiff has failed to state an actionable breach of contract claim against it.

**IV. Conclusion**

For the foregoing reasons, the defendant's motion for summary judgment (Doc. 20) is due to be **GRANTED** and this action is due to be **DISMISSED WITH PREJUDICE**.  A separate order will be entered.

**DONE** this 24th day of March, 2020.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE